HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT WARGACKI, Substitute Administrator of the Estate of Michael A. Erb and Personal Representative/Administrator of the Estate of Anne-Marie Wargacki,<br><br>Plaintiff,<br><br>v.<br><br>WESTERN NATIONAL ASSURANCE COMPANY, a Minnesota corporation,<br><br>Defendant. | CASE NO. C13-5373RBL<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>[DKT. #S 50 AND 88] |

THIS MATTER is before the Court on the parties' competing motions for Summary Judgment [Dkt. #s 50 and 88]. The Court must decide whether the victim's estate's underlying complaint plausibly, factually alleged that her murder was common "negligence," thereby triggering the shooter's insurer's duty to defend. The Court has already determined that the shooting was squarely within the policy's criminal acts exclusion—that the shooting was not "actually covered"—and that the insurer did not have a duty to indemnify the shooter as a matter of law.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT - 1

Because no reading of the complaint's factual allegations could conceivably lead to the conclusion the shooting was an "accident," or anything other than an intentional, criminal act, the insurer similarly had no duty to defend the underlying claim under its policy. Its failure to do so was not bad faith, as a matter of law.

## I. FACTS

### A. Erb's Homeowner's Policy

Michael Erb purchased a Western homeowner's insurance policy in June 2009. The policy (like all such policies) reflects the insurer's agreement to defend and indemnify Erb from liability for bodily injury caused by accidental occurrences. The policy is subject to various exclusions, including criminal and intentional acts. It does not cover "bodily injury" which is "expected by, directed by, or intended by an insured or that is the result of a criminal act of an insured." [Policy, Dkt. #89-1 at 24]  In short, the policy covers accidents, but it does not cover intentional or criminal acts.

### B. The Shootings.

On June 27, 2010 Michael Erb shot his pregnant girlfriend in the back of the head with a .45 caliber hand gun. Anne-Marie Wargacki and her unborn child died immediately. Moments later, Erb shot himself in the head. He died before he reached the hospital. There were no eye witnesses. A roommate heard talking or arguing before the shots, and neighbors heard only two shots in rapid succession.

Police interviewed the roommate and the neighbors, and observed the relative positions of the bodies, the gun, the blood, and the entry and exit wounds. The medical examiner confirmed that Wargacki and her baby died from the bullet. The police concluded that Erb murdered Wargacki and then killed himself, intentionally.  They informed the public of these findings the next day.

**C. The Lawsuit.**

Three months later, Wargacki's Estate sued Erb's Estate for wrongful death. The complaint's factual allegations were intentionally sparse:

## II. FACTS

2.1 On or about June 27, 2010, Decedent Michael A. Erb, either negligently, intentionally or recklessly discharged a firearm striking Anne-Marie Wargacki, and thereby causing grievous bodily injuries that ultimately proved to be fatal;

2.2 As a result of Decedent/Defendant Michael A. Erb's having discharged a firearm and causing the death of Anne-Marie Wargacki, Decedent/Defendant Michael A. Erb also caused the death of Anne-Marie Wargacki's unborn child, "Jane/John" Wargacki;

2.3. That Defendant's actions in causing grievous bodily injury to Decedents Anne-Marie Wargacki and her unborn child, constitute acts or omissions in callous disregard for the safety and well-being of Decedent Anne-Marie Wargacki and her unborn child, and are not only negligent, but so far beyond the pale of human decency, that they constitute the tort of outrage;

[Dkt. #20-1]

On December 16, 2010, the Erb Estate's lawyer (Joel Flores) informed Western of the Erb's suicide and the lawsuit, and requested copy of Erb's homeowner's policy. He also told Western that Erb "may have" killed Wargacki:

> On June 27, 2010, it is believed that Mr. Erb committed suicide in his home. Prior to committing suicide Mr. Erb may have shot and killed his estranged girlfriend in his home. A wrongful death action has been filed against the Estate of Michael Erb. The purpose of this letter is to determine whether coverage may exist under any of Mr. Erb's insurance policies.

1  Western sent Flores a certified copy of the policy.  A Western employee located several
2  news articles reporting on the event, which quoted a Tacoma Police Department spokesman
3  about police investigation's results:  Erb's roommate was in the home at the time of the shooting
4  and heard the couple talking before two gunshots.  Erb had been depressed and was struggling
5  with financial issues, including a recent job loss, and his girlfriend's pregnancy.

6  A Western claims attorney, Molly Wingate, reviewed Erb's homeowner's policy,
7  particularly its "intentional and criminal acts" exclusion.  Wingate also researched similar cases
8  involving the applicability of homeowner's policies to murder/suicides, and determined that
9  because the shooting was not an accident, it was not covered by the policy.  On January 11,
10 2011, Flores sent a letter repeating his request for "a coverage determination."  On January 24,
11 Wingate spoke to Flores on the telephone and asked him for a copy of the complaint.  She told
12 him that the shooting was not covered and that she would be sending him a letter explaining
13 Western's determination.

14 Flores told Wingate that he was not surprised by this decision; he "merely needed to
15 jump through all the hoops" and obtain a denial in writing.  Flores did send Wingate a copy of
16 the complaint.  Wingate reviewed the complaint, confirmed her conclusion that Wargacki's death
17 was not an accident, and sent a letter denying coverage for the claim arising from it.  Flores did
18 not respond, and Western did not defend or have any other role in the lawsuit.  Western did not
19 hear from Flores or anyone else about the claim or the case for 28 months.

20 Meanwhile, the Erb Estate conceded that it was liable to the Wargacki Estate.  The
21 Superior Court held a trial to determine Wargacki's damages.  Wargacki claimed that Erb was
22 "at least negligent" in killing Wargacki, and obtained a judgment to that effect.   But nothing at
23 the trial altered the conclusion that Wargacki's death (and Erb's) was intentional.  Indeed,
24

Wargacki's own attorney explained in his opening statement that Wargacki's pregnancy was part of what *motivated* Erb to shoot her.

On July 13, 2012, the Superior Court signed Wargacki's proposed Findings and Conclusions, and entered a $7,003.664.19 Judgment in her favor. Almost a year later, Wargacki's lawyer sent Western a letter demanding payment of the judgment. On May 17, 2013, Western filed this Declaratory Judgment action. Western seeks a determination as a matter of law that it had no duty to defend despite the complaint's legal characterization of the shooting as "negligent." Wargacki argues that her complaint triggered Western's duty to defend, and that its failure to do so was bad faith as a matter of law.

## II. DISCUSSION

This Court previously ruled that the policy's intentional and criminal acts exclusion applied, that the shooting was not "actually covered," and that Western had no duty to indemnify the Erb's Estate. [Dkt. #35]. This Order addresses whether Western nevertheless had a duty to defend Erb in the underlying case, and, if so, whether its failure was bad faith resulting in coverage by estoppel.

**A.  Summary Judgment Standard.**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact-finder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. At 251-52.  The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the movant has met this burden, the nonmoving party then mut show that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 250.  If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

**B.  The Duty to Defend.**

As Wargacki emphasizes, in Washington, the duty to defend is broader than the duty to indemnify.  *Safeco Ins. Co. of Am. v. Butler*, 118 Wash.2d 383, 392 (1992).  The duty to indemnify exists only if the policy *actually covers* the insured's liability.  The duty to defend is triggered if the insurance policy *conceivably* covers the complaint's factual allegations.  *Woo v. Fireman's Fund Ins. Co.*, 161 Wash.2d 43, 53 (2007).  Put another way, the duty to defend arises when a complaint against the insured, construed liberally, alleges *facts* which could, if proven, impose liability upon the insured with the policy's coverage.  *Truck Ins. Exch. v. Van Port Homes, Inc.*, 147 Wash.2d 751, 760 (2002).

An insurer may not put its own interests ahead of its insured's.  *Mut. of Enumclaw Ins. Co. v. T&G Const., Inc.*, 165 Wash.2d 255, 269 (2008).  To that end, it must defend until it is clear that the claim is not covered.  *Truck Ins. Exch.*, 147 Wash.2d at 765.

**C.  Analysis.**

Wargacki argues that the insurer (and the Court) was required to review—and limited to reviewing—only the "four corners" of the complaint to determine whether its allegations were

"conceivably covered" by the policy[1]. She claims that because her complaint legally characterized the alleged "fact" of a shooting as "negligence," the duty to defend[2] was triggered as a matter of law. She cites primarily *Woo v. Fireman's Fund Insurance Co.* 161 Wn.2d 43, 164 P.3d 454 (2007) ("The rule requires us to determine whether the complaint alleged facts that were conceivably covered under the insurance policy.")

Western argues that its denial of coverage (and a defense) was proper under cases holding that homeowners' policies do not cover shootings that are not accidental. It cites *Allstate v. Raynor* 143 Wn.2d 469, 21 P.3d 707 (2001)—a case its coverage attorney researched before denying coverage, and one this Court cited in determining that the claim was not actually

---

[1]   Because the insurer also looks within the "four corners" of the insurance policy, this is sometimes referenced as an "eight corners" inquiry.

[2]   The "rest of the story" does not support Wargacki's other (perhaps inconsistent) claim that Western also engaged in bad faith by *failing* to investigate her claim against Erb.

When he signed the complaint, Wargacki's attorney knew that the Erb had told his roommate that his girlfriend's pregnancy meant that "his life was over." Erb told his roommate that, two weeks earlier, he had taken his gun to a secluded logging road, and that he didn't plan to return. The roommate understood this to mean that Erb had intended to kill himself. One week later—a week before he *did* kill himself, and Wargacki— Erb tried to kill himself by ingesting pain killers, muscle relaxants, and a fifth of whiskey. Erb's roommate promptly intervened and Erb survived that attempt.

On the other hand, to this day Wargacki has offered no evidence whatsoever supporting the claim the shooting conceivably might have been a non-criminal, tragic and unintentional accident—negligence. She concedes as much in her own Motion for Summary Judgment, openly asking the Court to speculate that the shooting could have been an accident, and claiming that "Erb's mental state" remains "an open question." But while an impaired mental state—severe intoxication, depression or outright insanity—might have been a defense to a first degree murder charge (if Erb had survived his suicide attempt), it would not mean that the shooting was "accidental" and therefore covered.   The open question does not need to be answered to determine the coverage issue.

covered. It also relies on a similar, recent Minnesota case, *Country Mut. Ins. Co. v. Denton,* 2014 U.S. Dist. LEXIS 174146, 0:14-cv-01343-PAM-TNL, for the same proposition.

Wagracki did not allege that the shooting was an accident, or remotely allege facts reasonably implying that it might be. He could not so allege consistent with his Rule 11 obligations, and he did not (and could not) plausibly do so under *Twombly* and *Iqbal*. He did not, and could not, allege any facts supporting this legal conclusion, any more than he could allege that Erb was cleaning his gun, or believed the gun was not loaded[3].

Instead, he factually alleged only a fatal shooting and legally labeled[4] it "at least negligent." The facts Wargacki did allege, viewed liberally and objectively, offer no support for the claim that the events were "conceivably" the result of an accident. Wargacki claims that because no one can ever know what *exactly* transpired, or why, it was (and will always be) "conceivable" that Erb shot Wargacki in the head at close range in some non-intentional, non-criminal, covered-by-his insurance-policy, manner. This claim is not enough to trigger coverage. It cannot be; if it were, no "investigation" would ever allow Western to terminate the defense, because it would never "become clear" that there was no coverage. The unassailable, metaphysical "possibility" that the shooting was not intentional would, in Wargacki's view, mean that it was actually covered by Erb's homeowner's policy.

---

[3] Nor is there any evidence remotely suggesting any other cause of death, with or without insurance coverage implications. There is no evidence that Wargacki shot first, that Erb fired in self defense, that the pair were assassinated for political or drug reasons, or that the shooter was actually a one-armed stranger. The conclusive, if circumstantial, evidence supports only one reasonable, plausible factual determination: Erb shot Wargacki on purpose.

[4] Wargacki's complaint also alleged that the shooting was "not only" negligent but also enough to sustain claim for outrage—the *intentional* infliction of emotional distress. *Sutton v Tacoma School District No. 10*, 180 Wash.App. 859, 324 P.3d 763 (2014).

Whatever Erb's actual mindset or motive, the shooting was an intentional, criminal act, which is excluded from coverage as a matter of law. This was known to all from the very beginning, and no amount of spin, massage, speculation or sophistry can make it otherwise.

There was no duty to defend, and there was no bad faith as a matter of law. Western's Motion for Summary [Dkt. #50] is **GRANTED**, and Wargacki's Motion for Partial Summary Judgment [Dkt. #88] is **DENIED.**

Dated this 6th day of January, 2015.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE